# No. 24-50600

# In the United States Court of Appeals for the Fifth Circuit

_____

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

**v.**

**THOMAS SCOTT PERKINS,**

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Western District of Texas

_____

**APPELLEE'S BRIEF FOR THE UNITED STATES OF AMERICA**

_____

JAIME ESPARZA
United States Attorney

ELIZABETH BERENGUER
Assistant United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7090
ATTORNEYS FOR APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

The government submits that oral argument is unnecessary. This Court previously reversed the defendant's sentence based solely on the district court's inadequate explanation of its non-guidelines sentence. The case was remanded for resentencing and the district court again imposed a non-guidelines sentence, but also provided an exhaustive explanation of its upward variance. In his sole issue on appeal, the defendant challenges the substantive reasonableness of that sentence. This issue is neither novel nor complex. It is also a matter reserved for the district court's discretion, subject to deferential review. Therefore, the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the decisional process. *See* Fed. R. App. P. 34(a)(2)(C); 5th Cir. R. 28.2.3.

**TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ....................................ii

LIST OF AUTHORITIES ..........................................................iv

JURISDICTION .................................................................... 1

STATEMENT OF THE ISSUE.................................................... 1

STATEMENT OF THE CASE ..................................................... 1

A.       Offense Conduct.................................................... 1

C.       The First Sentencing ............................................. 4

D.        The Resentencing ................................................ 5

SUMMARY OF THE ARGUMENTS........................................... 10

ARGUMENTS.................................................................... 11

The District Court Did Not Abuse Its Discretion in Imposing a Non-Guidelines Sentence Based on Its Application of the Statutory Sentencing Factors in 18 U.S.C. § 3553(a). ................................... 11

A.   Standard of Review .................................................. 11

B.   Argument ............................................................ 12

CONCLUSION ................................................................... 20

CERTIFICATE OF SERVICE................................................... 21

CERTIFICATE OF COMPLIANCE ............................................ 21

# LIST OF AUTHORITIES

**Cases**

*Gall v. United States,*
  552 U.S. 38 (2007)......................................................................11

*Irizarry v. United States,*
  553 U.S. 708 (2008)....................................................................11

*United States v. Brantley,*
  537 F.3d 347 (5th Cir. 2008)...............................................16, 19

*United States v. Conlan,*
  786 F.3d 380 (5th Cir. 2015)......................................................12

*United States v. Deem,*
  623 F. App'x 206 (5th Cir. 2015) ..............................................19

*United States v. Diehl,*
  775 F.3d 714 (5th Cir. 2015).....................................................12

*United States v. Fraga,*
  704 F.3d 432 (5th Cir. 2013)................................................11, 15

*United States v. Hoffman,*
  901 F.3d 523 (5th Cir. 2018)......................................................19

*United States v. Hudgens,*
  4 F.4th 352 (5th Cir. 2021) ........................................................18

*United States v. Jones,*
  444 F.3d 430 (5th Cir. 2006)......................................................19

*United States v. Key,*
  599 F.3d 469 (5th Cir. 2010)......................................................13

*United States v. McElwee,*
  646 F.3d 328 (5th Cir. 2011)......................................................13

*United States v. Mejia-Huerta,*
  480 F.3d 713 (5th Cir. 2007)......................................................19

*United States v. Miller,*
  665 F.3d 114 (5th Cir. 2011)................................................14, 16

*United States v. Mondragon-Santiago,*
  564 F.3d 357 (5th Cir. 2009)..................................................................11

*United States v. Naidoo,*
  995 F.3d 367 (5th Cir. 2021)..................................................................16

*United States v. Saldana,*
  427 F.3d 298 (5th Cir. 2005)..................................................................19

*United States v. Schmidt,*
  552 F. App'x 300 (5th Cir. 2014) ..........................................................19

*United States v. Schrank,*
  975 F.3d 534 (6th Cir. 2020)..................................................................14

*United States v. Simpson,*
  796 F.3d 548 (5th Cir. 2015)..................................................................11

*United States v. Smith,*
  417 F.3d 483 (5th Cir. 2005)..................................................................19

*United States v. Smith,*
  440 F.3d 704 (5th Cir. 2006)..................................................................12

*United States v. Willingham,*
  497 F.3d 541 (5th Cir. 2007)..................................................................16

**Statutes**

18 U.S.C. § 2252A ......................................................................................4

18 U.S.C. § 3553............................................................................... passim

18 U.S.C. § 3584....................................................................................12, 18

18 U.S.C. § 3742 ..........................................................................................1

28 U.S.C. § 1291 ..........................................................................................1

**Other Authorities**

Melanie Clark Mogavero, *Autism, Sexual Offending, and the
  Criminal Justice System,* 7 J. Intell. Disabilities and Offending
  Behav. 116 (2016) ..............................................................................17, 18

## JURISDICTION

This is an appeal from a district court's final judgment in a federal criminal case. The district court had jurisdiction under 18 U.S.C. § 3231. The defendant filed a timely notice of appeal (ROA.556), within 14 days of the judgment (ROA.547-56). This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

On remand from this Court, the district court found that an upward variance from the guidelines range was warranted based on a careful and exhaustive application of the sentencing factors in 18 U.S.C. § 3553(a). Did the court abuse its discretion by imposing by a non-guidelines sentence?

## STATEMENT OF THE CASE

This appeal arises from Thomas Scott Perkins' conviction for distributing and possessing child pornography. On appeal, Perkins challenges the substantive reasonableness of his sentence.

### A.    Offense Conduct

In 2019, HSI agents assigned to a child-exploitation task force discovered that an IP address in Fort Stockton, Texas, was sharing child pornography. (ROA.2217, 948-49.) The IP address was registered to house occupied by Perkins and his parents. (ROA.2219, 955.) When contacted by agents, Perkins' parents described him as "tech savvy" and said

1

he had downloaded and viewed child pornography ten years earlier, while in high school. (ROA.2220-21, 958, 962, 1005.)

When agents arrived to search the house, Perkins was sitting in the living room, masturbating to a pornographic video. (ROA.2221.) During the search, Perkins inquired about the reason the agents were at the home and told one agent unprompted that, "[a]nything you got, you had to have gotten illegally because there's no way you got past my VPN."[1] (ROA.1254.)

Perkins agreed to an interview. (ROA.2221-22.) When informed that agents were investigating computer activity at his house, Perkins told agents that he had "a lot of stuff he had been meaning to get rid of." (ROA.962.) He confirmed that he was familiar with BitTorrent, the software used to distribute the child pornography the agents had discovered. (ROA.962-63.) Perkins said that he had collected a lot of information over the past 10 years and had intended to "secure delete" it, a method of permanently deleting files by use of a specialized software. (ROA.697-98, 1157.) When told that agents were able to download child pornography from his IP address, Perkins expressed surprise that anyone had been able to download his files because he had been using two VPNs for "security purposes," which were "leak proof." (ROA.965-66, 1046-47.) Perkins

---

[1] A virtual private network (VPN) allows a user to securely sending data to another computer over the internet by encrypting or "scrambl[ing]" the data. (ROA.865.)

said he used his VPNs for "risky downloads." (ROA.1045.) He admitted he knew that the files he downloaded using BitTorrent software were available to share. (ROA.967, 1008, 2223-24.)

Although Perkins was "evasive" about the materials he had downloaded, he told agents that, after researching the issue, he understood that a Supreme Court ruling allowed him to view and possess child pornography so long as there was only "nudity" involved. (ROA.968, 2223.) He admitted that he was aroused by the "nudist" materials he possessed and that he masturbated while viewing them. (ROA.969, 2223.) He also admitted that he used the search terms "PTHC" (preteen hardcore) and "Lolita" to find child pornography online. (ROA.1045, 970, 1045-51.) Perkins said he preferred to look for materials depicting 8, 9, and 10-year-olds. (ROA.1046.)

When asked if he would have sex with a child, Perkins admitted that if a 12- or 13-year-old child initiated sex with him, he would be willing so long as the sex occurred in a secure environment where he could lock the door because "he really didn't want to get caught." (ROA.1058.) He also admitted that he had touched a 10- to 12-year-old girl's chest while flirtatiously playing with her at a church event four years earlier. (ROA.2224.) Although Perkins denied the incident was sexual, he thought the girl viewed it as inappropriate based on her reaction when he touched her. (ROA.2224.)

Agents examined 30 devices found inside Perkins' house, including external storage devices. (ROA.1079.) These devices contained over 100,000 images and videos depicting child pornography. (ROA.1083, 2225, 2231, 2218-19, 1132-35.) Some of the images and videos had been manually saved into user-created folders labeled "child porn," with a subfolder for videos, and "PTHC." (ROA.1097-98, 1164.) The materials included photos and videos of adults performing sexual acts on prepubescent children, including toddlers. (ROA.2225-30.) They also included sadistic depictions of sexual violence. (ROA.2225-30, 1128.) Agents found internet browser search terms used on the devices, including "kiddie porn," "naked preteen," "naked preteen girls," and "naked preteen boys." (ROA.1136-37.)

In September 2020, Perkins was charged with one count of distributing child pornography, 18 U.S.C. § 2252A(a)(2), and eight counts of possessing child pornography involving prepubescent minors under age 12, 18 U.S.C. § 2252A(a)(5)(B). (ROA.30-32, 359-66.) During competency proceedings, Perkins was diagnosed with mild autism spectrum disorder and other mental disorders. (ROA.2312, 2320-21, 2345-48.) The court found that Perkins was competent to stand trial. (ROA.233-34.) After the two-day trial, the jury found Perkins guilty as charged. (ROA.401-03.)

## C.   The First Sentencing

The presentence report grouped all nine counts for guidelines-calculation purposes. (ROA.2233.) The total offense level was 37, resulting

in an advisory guidelines range of 210–262 months, which was capped at 210–240 months based on the statutory maximum sentence. (ROA.2235, 2239.) The district court imposed a non-guidelines sentence of 210 months on each count, with each term to run consecutively, for a total sentence of 1,890 months in prison. (ROA.472-74.)

Perkins appealed, challenging the competency determination and the procedural and substantive reasonableness of his sentence. (ROA.515-16.) The Court affirmed the conviction, deferring to the district court's finding that Perkins was competent to stand trial. (ROA.521-31.) But it vacated the sentence after determining that the district court failed to adequately explain its upward variance. (ROA.533-40.) The Court "express[ed] no view on the sentence that the district court should announce on remand." (ROA.540.)

**D.    The Resentencing**

After the case was remanded, Perkins submitted a sentencing memorandum and requested a downward variance. (ROA.2552-64, 1403:2-4.)

At the resentencing hearing, Perkins renewed his request for a downward variance based on his mental conditions and because he "has never harmed another human being . . . [s]o the need to protect the public is not at play here." (ROA.1404-08, 1414-16.) Perkins' counsel described the materials Perkins possessed as "not some of the worst things that you've ever seen," but merely "erotica." (ROA.1415.) His counsel also

minimized the volume of materials Perkins downloaded as "common" and claimed that Perkins only downloaded the materials because of "compulsive sort of behavior based on [his autism spectrum disorder]," with "no real evidence that Mr. Perkins engaged with these videos or even watched them." (ROA.1416.) The government opposed the variance. (ROA.1410-14.)

The court denied Perkins' motion and instead found that an upward variance was warranted under 18 U.S.C. § 3553(a) because the guidelines range "is not fair and reasonable." (ROA.1417.) Based on its familiarity with the case it had presided over "since its inception," the court found there were "aggravating circumstances of a kind and to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." (ROA.1417-18.)

The court first addressed the "nature and seriousness of the offense" and the "history and character[istics] of the defendant." (ROA.1418.) *See* § 3553(a)(1). While the court acknowledged that it was "very familiar" with Perkins' "vast" and "many" mental health issues, it explained that it could not "wall that off and consider only that." (ROA.1418.) The court noted that Perkins' involvement in child pornography "goes back a long, long way" before the charged offense, "some ten years . . . at least to when Mr. Perkins was in high school." (ROA.1418-19.) The court also cited the 102,332 files located on 10 devices—"a substantially large amount of child pornography"—consisting of photos and

videos depicting prepubescent children engaged in sexual acts with adults. (ROA.1419-20, 1424.) The court disputed defense counsel's suggestion that Perkins was a rule follower, citing evidence that Perkins in fact "struggles with rules and restrictions," which causes him to "explode with anger and act violently at times." (ROA.1421.)

The court next addressed the "need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment." (ROA.1421.) *See* § 3553(a)(2)(A). The court found that Perkins had "attempted to conceal his activities" of downloading child pornography by using VPNs and storing the materials under his parents' profile. (ROA.1422-23.) The court observed that Perkins was familiar with terms like "preteen hardcore" and had searched for phrases like "preteen girls having sex," "kiddy porn," and "naked preteen boys." (ROA.1424,) Perkins also possessed "numerous videos showing sadistic conduct," including very young children being "vaginally and anally penetrated by adult males"; a three- or four-year-old "blindfolded, tied to a chair, and forced to perform oral sex on an adult male"; a young girl "crying as an adult male performed sexual acts upon her"; and "children appearing to be in pain as they are vaginally and anally penetrated by adult males." (ROA.1424-25.) The court explained that the images Perkins possessed "far exceeds" the 600 images required to increase his sentence under section 2G2.2(b)(7)(S). (ROA.1424-25.) The court also observed that the guidelines did not capture the "thousands of [unidentified] victims"

in Perkins' materials, who were "revictimized each time these hideous and evil images are viewed." (ROA.1426.) Ultimately, the court found, that "[t]he guidelines simply do not reflect the seriousness of this offense" or "provide just punishment" because they did not account "for the substantial number of images, the content of images and videos, and the number of identified victims." (ROA.1425, 1426.)

The court then addressed "the need for the sentence imposed to protect the public from further crimes of the defendant." (ROA.1426.) § 3553(a)(2)(C). The court found Perkins had "admitted if given the opportunity, he'd be willing to have sexual intercourse with a child as young as 12 or 13 years old," but had not yet acted on this desire only because "he did not have access to a secure environment." (ROA.1426-27.) The court found that Perkins "admitted to acting out on a prior occasion" and "touching a female victim's breast" while "flirtatiously playing" with her at a church function. (ROA.1427.) Perkins had acknowledged that the child "viewed the contact as inappropriate." (ROA.1427-28.) The court also cited evidence that Perkins admitted he masturbated while viewing child pornography. (ROA.1428.) Based on this evidence, the court found that Perkins "certainly demonstrated through all this that he's a danger to the public" and that "children are in danger of being exploited or sexually assaulted if [he]'s not confined or denied access to children." (ROA.1428.)

Finally, the court addressed "the need for the sentence imposed to provide the defendant with needed educational, vocational training, medical care, other correctional treatment in the most effective manner." (ROA.1428) *See* § 3553(a)(2)(D). The court found that Perkins suffered from "multiple mental health disorders," but had refused to take medication for those conditions. (ROA.1428-29.) It also cited evidence that Perkins had refused to cooperate when his parents instructed him to stop viewing child pornography and showed "combative violent behavior against type of authority placed on him." (ROA.1429.) The court found that participation in a mental-health program while incarcerated would help treat Perkins' mental illness and "control[ ] his combativeness." (ROA.1429.)

After assessing the statutory sentencing factors in § 3553(a), the court found that a "significant upward variance" was appropriate to reflect these factors. (ROA.1429.) It then imposed a sentence of 240 months in prison on Counts 1 through 8, to run consecutively to a 120-month term imposed on Count 9, for a total sentence of 360 months. (ROA.1430, 547-55.) Perkins objected to the sentence, claiming it was unreasonable. (ROA.1432-33.) This appeal followed.

## SUMMARY OF THE ARGUMENTS

The district court did not abuse its discretion in imposing a non-guidelines sentence in this case. The court considered the §3553(a) factors and provided a sufficient justification for the upward variance based on Perkins' unique aggravating circumstances. Indeed, the court's detailed findings applying the § 3553(a) factors spanned 14 pages of the sentencing transcript and expressly cited the guidelines' failure to fully account for these factors. These findings included the decade-long period Perkins had been collecting his "substantial" volume of child pornography; the "sadistic," "hideous," and "evil" content of the materials he possessed; his professed desire to have sex with children and admission that he masturbated to child pornography; a troubling "flirtatious" interaction where Perkins inappropriately touched a young girl; and his "combative violent" response to "any type of authority." Under the totality of circumstances, Perkins' sentence, including the extent of the variance, was not unreasonable.

## ARGUMENTS

**The District Court Did Not Abuse Its Discretion in Imposing a Non-Guidelines Sentence Based on Its Application of the Statutory Sentencing Factors in 18 U.S.C. § 3553(a).**

### A.   Standard of Review

When preserved as here, this Court generally reviews a sentence for reasonableness under a deferential abuse-of-discretion standard. *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009). The Court will consider the substantive reasonableness of the sentence based on the totality of circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). A non-guidelines sentence carries no presumption of unreasonableness. *Irizarry v. United States*, 553 U.S. 708, 714 (2008) (citing *Gall*, 552 U.S. at 51). While the Court may consider the extent of any variance under an abuse-of-discretion standard, it "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Fraga*, 704 F.3d 432, 440 (5th Cir. 2013) (quoting *Gall*, 552 U.S. at 51.) This Court's review of the reasonableness of a sentence is "highly deferential as the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant." *United States v. Simpson*, 796 F.3d 548, 557 (5th Cir. 2015) (quoting *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008)).

11

## B.   Argument

Perkins challenges the substantive reasonableness of his sentence. But considering the relevant factors, the district court did not abuse its discretion when it sentenced Perkins to a 360-month prison sentence, a 120-month variance above the guidelines range.

A sentencing court has the discretion to vary upwardly from the guidelines range based on the § 3553(a) factors and impose consecutive sentences. *See* 18 U.S.C. § 3584; *United States v. Conlan*, 786 F.3d 380, 394–95 & n.46 (5th Cir. 2015). Even a significant variance from the guidelines is not an abuse of the court's discretion "if it is commensurate with the individualized, case-specific reasons provided by the district court." *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015). A non-guidelines sentence unreasonably fails to reflect the statutory sentencing factors in § 3553(a) only "where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006). The greater the variance, the more compelling the justification based on factors in § 3553(a) must be. *Id.* at 707.

The district court acted within its discretion in imposing the 360-month sentence. There is no evidence that the district court failed to account for a factor that should have received significant weight, gave significant weight to an irrelevant or improper factor, or committed a clear

12

error of judgment in balancing the § 3553(a) factors. Rather, the district court expressly considered the nature and circumstances of the offense, Perkins' history and characteristics, and the need for the sentence imposed to promote respect for the law, protect the public, and provide just punishment. (ROA.1417-29, 2261.) The court also provided a sufficient justification for the upward variance, making express findings about Perkins' unique aggravating circumstances that were not adequately captured by the guidelines. (ROA.1417-29.) *See United States v. McElwee*, 646 F.3d 328, 344−45 (5th Cir. 2011); *United States v. Key*, 599 F.3d 469, 475 (5th Cir. 2010). The court found that Perkins not only committed a serious crime by possessing and distributing very disturbing materials depicting the sexual abuse and torture of very young children, but he did so for many years. (ROA.1418-19). For more than a decade, Perkins amassed a vast collection of more than 100,000 images and videos, storing some in content-labeled folders on his computer. (ROA.1419-20, 1424, 2220, 1083-98, 2225.) The images Perkins possessed "far exceed[ed]" the 600 images required to increase his sentence under the guidelines. (ROA.1424-25.) His family members' attempts to stop him were unsuccessful. (ROA.2220-21.) Perkins instead saved the materials under his family members' computer profiles and tried to use multiple VPNS when downloading files to hide his crimes from law enforcement. (ROA.2220, 965-66, 1046-47, 1422-23.)

Despite his attempts to minimize his offense (at Br. 53–54), Perkins' insatiable appetite for tens of thousands of images and videos of prepubescent children being raped and sodomized leads to real children being abused and violated when that material is made. *See United States v. Miller*, 665 F.3d 114, 123 (5th Cir. 2011). The court found that the guidelines did not capture the "thousands of [unidentified] victims" in Perkins' materials, who were "revictimized each time these hideous and evil images are viewed." (ROA.1426.) And "[b]y repeatedly downloading images of young children being raped," Perkins "contributed to their past victimization" and "contributed to the future harm done to children in the name of profit." *United States v. Schrank*, 975 F.3d 534, 536 (6th Cir. 2020). Those stories of victimization and abuse were directly before the court. (ROA.1472-2202.)

Aside from the seriousness of his offenses, the court found that Perkins' admitted sexual interest in children and active predation presented a danger to the public. (ROA.1426-28, 2261.) *See* § 3553(a)(2)(C). Perkins admitted that he was sexually aroused by child pornography and that he masturbated while watching it. (ROA.969, 2223, 1428.) He preferred materials depicting 8, 9, and 10-year-olds (ROA.1046) and admitted he would have sex with a 12-year-old child if he could ensure he would not be caught (ROA.1058, 1426-27). Despite his insistence on appeal that he's a "homebound" loner and therefore harmless (at Def. Br. 9, 19, 47), Perkins has access to children and admitted he had touched a 10- to 12-year-

old girl's chest while flirtatiously playing with her at a church event. (ROA.2224, 1427.) Based on its thorough consideration of the relevant §3553(a) factors, the court imposed an upward variance. (ROA.1429.) Under the totality of circumstances, the sentence, including the extent of the variance, was reasonable.

Perkins' arguments on appeal (at Br. 52–60) primarily amount to a request for this Court to reweigh the statutory sentencing factors, which the Court will not do. *See Fraga*, 704 F.3d at 439 (holding that the sentencing court is "in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant"). None of his arguments establish that the court abused its substantial sentencing discretion, including its discretion to impose consecutive sentences, based on its assessment of the § 3553(a) factors. The court did not "disregard" mitigating factors, such as Perkins' mental-health disorders and lack of criminal history. (Def. Br. 28–29, 35.) Rather, the court—having deep familiarity with Perkins' mental-health history from having presided over the case from its inception, through its protracted pretrial competency proceedings, and throughout the jury trial—expressly considered Perkins' "vast" and "many" mental health issues. (ROA.1417-18.) But the court said it could not "consider only" those mental-health issues. (ROA.1418.) Its decision to weight Perkins' mental-health conditions differently in its § 3553(a) analysis than Perkins would is not an abuse of discretion.

15

Perkins' has shown any clear error of judgment in balancing the sentencing factors. Despite his attempt (at Br. 49-50) to argue that his sentence is disparate by pointing to statistics collected by the Sentencing Commission, the Court is "not tasked with applying statistical analyses to assess the reasonableness of a particular sentence in a particular case." *Miller*, 665 F.3d at 122; *see also United States v. Willingham*, 497 F.3d 541, 544–45 (5th Cir. 2007) (holding that "[n]ational averages of sentences" with "no details underlying the sentences" are "basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted"). And his attempted comparisons (at Br. 49–52, 56–57) to defendants convicted of other offenses do not demonstrate a disparity between "similarly situated" defendants. *United States v. Naidoo*, 995 F.3d 367, 383 (5th Cir. 2021). Contrary to Perkins' argument (at Br. 27, 54) that the child-exploitation guideline already sufficiently accounted for the severity of his offense, the district could rely on "factors already incorporated by the Guidelines to support a non-Guidelines sentence.'" *United States v. Brantley*, 537 F.3d 347, 350 (5th Cir. 2008).

Equally unavailing are Perkins' claims that the court abused its discretion by failing to attribute his child exploitation crimes to his mild autism. (Def. Br. 40–48, 59.) The district court—along with the BOP psychologist who examined Perkins in residence for three months (ROA.2045-48) and the jury who rejected his insanity defense (ROA.401-

16

02)—rejected the argument that Perkins was not responsible for his conduct due to his autism. While Perkins maintains that he collected child pornography merely as an "experiment" that he thought it was legal and that he did not know his actions were wrong due to his autism (Def. Br. 10–11, 43, 59), the record shows otherwise. Perkins admitted that he was sexually aroused by child pornography (ROA.969, 2223) and expressed a desire to have sex with children (ROA.1058). Perkins took careful measures to hide his crimes, including using two VPNs for "risky downloads," which he believed were "leak proof," and hid child pornography files under his parent's profile (ROA.965-66, 1046-47.) He was evasive about his crime with law-enforcement officers. (ROA.968.) And, despite his developmental disorder, he knew enough about his victims' emotions and facial expressions to know that he had crossed a line when he touched a young girl at church. (ROA.2224.)

Even the articles he cites in his brief do not support his claim that the court abused its discretion in imposing an upward variance despite Perkins' autism diagnosis. One article expressly qualified that an autism diagnosis does not necessarily increase the risk of offending and that "criminal behavior among individuals with [autism spectrum disorder] is rare." Melanie Clark Mogavero, *Autism, Sexual Offending, and the Criminal Justice System*, 7 J. Intell. Disabilities and Offending Behav. 116, 116 (2016). The author advocates against custodial sentences for those with autism because she presumes that individuals with autism "are

17

unaware that they have committed a crime" or were "unable to correctly guess the age of those in the images." *Id.* at 120 (cleaned up).[2] Not so with Perkins. He sought out "kiddie porn," "naked preteen," "naked preteen girls," and "naked preteen boys." (ROA.1136-37, 1045, 970, 1045-51.) He said he wanted pornographic materials depicting 8, 9, and 10-year-olds. (ROA.1046.) He said he would have sex with a 12-year-old if he would not get caught (ROA.1058.) He tried to hide his crime. (ROA.965-66, 968, 1046-47.) While Perkins' mild autism may have caused his heightened sensitivity, rigidity with routines, and repetitive behaviors (ROA.2320-21), it did not cause him to covertly seek out and masturbate to child pornography, inappropriately touch a girl at church, or collect nine hard drives filled with child pornography, including sadistic materials depicting the sexual torture of very young children.

It is also significant that the variance in this case still falls well under the statutory maximum authorized by Congress for Perkins' crimes. *See United States v. Hudgens*, 4 F.4th 352, 358–59 (5th Cir. 2021). Perkins was convicted of nine counts, each carrying a statutory maximum sentence of 20 years of imprisonment. § 2252A(b)(1), (2). The district court was authorized to order the sentences to run consecutively, for a total statutory maximum sentence of 180 years (2,160 months). § 3584.

---

[2] The author of the article argues that custodial sentences are never appropriate for those with autism spectrum disorder, even for those who commit sexual offenses. Mogavero, *supra*, at 121. Federal law contains no such prohibition.

Despite Perkins' suggestion (at Br. 26–28) that any upward variance from the already "draconian" child-pornography guideline is unreasonable, this Court has upheld upward variances in other child-pornography cases. *See, e.g.*, *United States v. Deem*, 623 F. App'x 206, 208 (5th Cir. 2015); *United States v. Schmidt*, 552 F. App'x 300, 306 (5th Cir. 2014); *United States v. Jones*, 444 F.3d 430, 433, 441–42 (5th Cir. 2006). The Court has also upheld substantial variances in appropriate cases far exceeding the 150% variance imposed in this case. *See, e.g.*, *United States v. Mejia-Huerta*, 480 F.3d 713, 716–19, 723–724 (5th Cir. 2007) (affirming upward deviations of 344% from the advisory guideline ranges); *Brantley*, 537 F.3d at 348–350 (affirming a 253% variance from the guidelines maximum); *United States v. Saldana*, 427 F.3d 298, 312–13 (5th Cir. 2005) (upholding the imposition of consecutive sentences that effectually quadrupled the maximum guidelines sentence); *United States v. Smith*, 417 F.3d 483, 492–93 (5th Cir. 2005) (affirming a three-fold increase from the guidelines maximum); *United States v. Hoffman*, 901 F.3d 523, 565 (5th Cir. 2018) (cleaned up) (Dennis, J., concurring in part and dissenting in part) (collecting cases upholding upward variances higher than 1,214% above-guidelines recommendations). And here, the court carefully explained its findings that the guidelines failed to account for Perkins' aggravated conduct—including the decade he had been collecting, the staggering volume of materials he collected, his attempts to conceal his crime, the sadistic nature of the materials he collected, the

19

number of victims, and his professed desire to have sex with children. (ROA.1417-28.) Because the district reasonably exercised its broad sentencing discretion, its sentence should be affirmed.

## CONCLUSION

For these reasons, this Court should affirm the defendant's judgment of conviction and sentence.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

/s/ *Elizabeth Berenguer*
By:    ELIZABETH BERENGUER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

On January 24, 2025, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

/s/ *Elizabeth Berenguer*
ELIZABETH BERENGUER
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), excluding the parts of the brief exempted by Rule 32(f), because it contains **4,333** words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

/s/ *Elizabeth Berenguer*
ELIZABETH BERENGUER
Assistant United States Attorney